J-S55015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY JAMES KRICK | : | |
| | : | |
| Appellant | : | No. 490 WDA 2020 |

Appeal from the Judgment of Sentence Entered March 10, 2020
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0000935-2018

BEFORE:  BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                         **FILED: MARCH 19, 2021**

Timothy James Krick appeals from his March 10, 2020 judgment of sentence ordering him to serve twenty-four months of intermediate punishment, which was entered after a jury found him guilty of simple assault. We affirm.

This case concerns an altercation that took place in Butler, Pennsylvania on the afternoon of April 27, 2018.  We glean the following facts from the testimony presented at Appellant's trial.  On the day in question, Peter Schmidt was meeting his minor stepsons, G.P. and J.P., at their bus stop at the intersection of Spang and Morton Avenues.  As Schmidt's youngest stepson, J.P., was exiting his bus along with several other children, Schmidt

_____

[*] Retired Senior Judge assigned to the Superior Court.

witnessed Appellant walking his dog. Appellant became "agitated" and loudly accused the children present of being "disruptive" by "messing" with Appellant's property[1] and "stealing his mail." **See** N.T. Trial, 10/15/19, at 19. Following a brief verbal altercation with the assembled children and parents, Appellant reportedly stated, "I'm going to take care of this once and for all," and entered his apartment building. **Id**. at 19-20.

Appellant returned moments later holding an unloaded Browning bolt-action rifle, which he was holding at waist height with both of his hands. He began to "holler" at the children to get away from the property and pointed the long gun at all those present, including Schmidt and his two stepsons. **Id**. at 21. When Appellant was momentarily distracted by another parent at the scene, Schmidt "sucker-punched" Appellant and wrested the rifle away from him. **Id**. Thereafter, Schmidt called 911 and police responded to the scene. Appellant was arrested and charged with two counts of simple assault, and one count each of terroristic threats and recklessly endangering another person ("REAP"). With specific reference to the simple assault charges, one count accused Appellant of menacing Schmidt and the other count referred to G.P. and J.P. **See** Information, 6/22/18, at 1.

_____

[1] At the time of this incident Appellant lived in an apartment building whose door was approximately "three feet" away from the bus stop. **See** N.T. Trial, 10/15/19, at 20.

A jury trial was held on October 15, 2019, at which Schmidt, G.P., and a representative of the Butler Police Department testified to the events described above.[2] After the close of the Commonwealth's case, the trial court granted a defense motion for acquittal as to the REAP charge due to the fact that the gun was not loaded.[3] *Id*. at 59. Ultimately, the jury found Appellant guilty of a single count of simple assault as to Schmidt, and found him not guilty of the remaining charges. On January 3, 2020, the trial court sentenced him to a total of twenty-four months of intermediate punishment, with the first six months to be spent under house arrest.

On January 31, 2020, the trial court vacated Appellant's sentence due to the General Assembly's repeal of the statute authorizing intermediate punishment as a sentencing alternative, which had taken effect on December 19, 2019, *i.e.*, before the trial court imposed Appellant's sentence. Approximately two hours later, Appellant filed a notice of appeal to this Court purporting to appeal the now-vacated sentence. **See** 202 WDA 2020. On March 10, 2020, Appellant was re-sentenced to a total of twenty-four months of probation, with the first six months to be spent under house arrest. On

_____

[2] Testifying in his own defense, Appellant claimed that he had merely intended to go to a shooting range when he exited his apartment with a drawn long gun. N.T. Trial, 10/15/19, at 66-74. In relevant part, he asserted his actions were unrelated to his altercation with Schmidt and the assembled children.

[3] **See Commonwealth v. Gouse**, 429 A.2d 1129, 1131-32 (Pa.Super. 1981) (brandishing an unloaded weapon in a menacing fashion constitutes simple assault, and not recklessly endangering another person).

March 18, 2020, Appellant filed an application to discontinue his appeal at 202 WDA 2020 in light of the trial court's resentencing order. By order dated March 23, 2020, this Court granted Appellant's application.

On April 9, 2020, Appellant filed the instant timely appeal from the trial court's resentencing order.[4] The trial court, again, directed Appellant to file a concise statement pursuant to Rule 1925(b). Appellant timely submitted an identical filing asserting the same errors. Thereafter, the trial court filed its Rule 1925(a) opinion.

Appellant has raised two issues for our consideration:[5]

I. Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant was guilty of simple assault, in violation of 18 Pa.C.S. § 2701(a)(3)?

II. Whether the trial court abused its discretion by allowing the testimony of a juvenile witness at trial when the defense had not received a statement or proffer of evidence regarding the witness' testimony prior to trial?

Appellant's brief at 10.

---

[4] "[T]he withdrawal and discontinuance of an appeal to this Court constitutes a withdrawal and discontinuance of the appeal only, thereby remitting the cause of action to the lower court for such further proceedings as the status of the case in the lower court otherwise dictates." *Mattson v. Fitzpatrick*, 378 A.2d 453, 455 (Pa.Super. 1977).

[5] In his brief to this Court, Appellant has withdrawn his arguments pursuant to Pa.R.Crim.P. 600. *See* Appellant's brief at 21 ("[U]pon further review of the record and the computation of time in which trial should have commenced, Appellant finds no merit to the argument and withdraws this issue."). Consequently, we will not address this claim further in this writing and have omitted it from the list of questions presented by Appellant.

Appellant's first issue challenges the sufficiency of the Commonwealth's evidence to convict Appellant of simple assault. We will keep the following well-established legal principles in mind:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019).

Appellant was convicted of simple assault under 18 Pa.C.S. § 2701(a)(3), which provides that "a person is guilty of assault if he attempts by physical menace to put another in fear of imminent serious bodily injury." Interpreting this statutory definition, this Court has concluded that "[t]he elements which must be proven are intentionally placing another in fear of imminent serious bodily injury through the use of menacing or frightening

activity. Intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances." ***Commonwealth v. Reynolds***, 835 A.2d 720, 726 (Pa.Super. 2003). Under Pennsylvania law, the act of threatening another with an unloaded firearm is a well-recognized act of simple assault. ***See id.*** at 727 ("The act of pointing a gun at another person can constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury."); ***see also Commonwealth v. Musi***, 404 A.2d 378, 381 (Pa. 1979) ("The law of this jurisdiction is clear that it is unlawful to point a firearm at another, whether loaded or unloaded.").

Appellant's sufficiency arguments assert that the Commonwealth failed to establish that Appellant intended to place Schmidt in fear of imminent serious bodily injury.[6] ***See*** Appellant's brief at 23-24 ("[T]he evidence

---

[6] Appellant also purports to challenge the weight of the evidence throughout his discussion of its sufficiency. ***See*** Appellant's brief at 22-26; ***see also Commonwealth v. Gibbs***, 981 A.2d 274, 281-82 (Pa.Super. 2009) ("[A] review of the sufficiency of the evidence does not include an assessment of the credibility of the testimony; such a claim goes to the weight of the evidence."). However, "a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. . . . Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." ***Commonwealth v. Rivera***, 238 A.3d 482, 497 (Pa.Super. 2020). Appellant did not preserve any challenge to the weight of evidence in the trial court. To the extent that Appellant seeks to challenge the weight or credibility of the Commonwealth's evidence, such arguments are waived. ***Id***.

indicated Appellant had no intention of causing fear of imminent serious bodily injury to [Schmidt] or to anyone for that matter."). We disagree.

Viewing the trial evidence in the light most favorable to the Commonwealth, the testimony of Schmidt and G.P. established that Appellant was upset about the presence of schoolchildren and their parents near or upon his property. When words failed to dispel this annoyance, Appellant announced his intention to "take care" of the situation through other means. *See* N.T. Trial, 10/15/19, at 19-20. He quickly retrieved a rifle from his residence and again confronted the gathering. Appellant then proceeded to point the weapon at Schmidt and those assembled while loudly demanding that they leave the vicinity of his home. *Id*. at 20-21, 43-45.

Viewed in the deferential light dictated by our standard of review, this testimony is sufficient to permit an inference that Appellant's intent was to place Schmidt in fear of imminent serious bodily injury. Appellant armed himself with a deadly weapon and used it to scare people away from his property. This is a textbook example of simple assault. ***See Musi***, ***supra***; ***Reynolds***, ***supra***; ***Commonwealth v. Trowbridge***, 395 A.2d 1337, 1340-41 (Pa.Super. 1978) ("[T]he legislature did not intend that the mere pointing of an unloaded weapon should give rise to criminal liability, **except as a simple assault**." (emphasis added)). No relief is due on this claim.

Appellant's second claim concerns the admissibility of G.P.'s testimony at trial. We note that "[t]he admissibility of evidence is solely within the

discretion of the trial court and will be reversed only if the trial court has abused its discretion." ***Commonwealth v. Hernandez***, 39 A.3d 406, 411 (Pa.Super. 2012). In this context, "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id***.

At trial, Appellant's counsel objected to G.P. testifying on the grounds that no statement had not been provided to the defense ahead of trial. ***See*** N.T. Trial, 10/15/19, at 41 ("While I was aware that this individual was present during this incident, I have received absolutely no statement from [G.P.]"). The Commonwealth responded that although G.P. was listed as a victim on the criminal complaint filed against Appellant, he never gave a "formal statement" to police.[7] ***Id***. The Commonwealth also pointed out that G.P. was subpoenaed to testify at trial on two separate occasions. ***See*** Subpoena to G.P., 7/8/19, at 1; Subpoena to G.P., 10/3/19, at 1.

Although acknowledging that he was aware of G.P.'s status as a putative victim and eyewitness, defense counsel protested on the grounds that he was "not going to hunt down a juvenile" ahead of trial. N.T. Trial, 10/15/19, at

---

[7] Officer Nick Shulik testified at trial that he attempted to take a formal statement from both G.P. and J.P. immediately after the incident. ***See*** N.T. Trial, 10/15/19, at 51. However, he was unable to obtain any substantive statements from them because they were "shook up" and "upset" in the aftermath of Appellant's aggressive behavior.

41. Counsel ultimately conceded that he never attempted to speak with G.P. before trial. *Id*. at 41-42. Accordingly, the trial court overruled Appellant's objection and G.P. testified as detailed above.

In relevant part, Appellant claims that it was "unrealistic to believe that defense counsel had a viable opportunity to speak to [G.P.] prior to trial." Appellant's brief at 27. However, Appellant does not identify any actual obstruction that prevented him from interviewing G.P. or investigating his testimony ahead of trial. Our review of the certified record has uncovered no indication that the Commonwealth documented G.P.'s testimony ahead of trial, or withheld such information from Appellant. Moreover, Appellant has not cited any legal obligation that would have required the Commonwealth to disclose any additional information regarding G.P.'s testimony prior to trial.

Rather, Appellant's arguments are composed of hypothetical arguments about what impediments **might** have arisen had he pursued such an investigation. *Id*. at 25-30 (arguing without foundation that Schmidt would have induced G.P. to lie and the Commonwealth would have been "appalled" if defense counsel had attempted to speak with G.P. and somehow prevented such an investigation). Defense counsel's lack of preparation regarding G.P.'s testimony does not appear to be the result of any misfeasance perpetrated by the Commonwealth. Instead, it was the product of defense counsel's conscious decision to not investigate. *See* N.T. Trial, 10/15/19, at 41-42.

Regardless of the relative wisdom of that decision, it is not a valid basis for excluding G.P.'s testimony.[8]

Based on the foregoing discussion, we discern no abuse of discretion or error of law in the trial court's evidentiary holding. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/2021

---

[8] Although the Commonwealth has not asserted any arguments concerning harmless error, we may raise such issues *sua sponte*. **See Commonwealth v. Hamlett**, 234 A.3d 486, 492 (Pa. 2020) ("[S]*ua sponte* invocation of the harmless error doctrine is not inappropriate as it does nothing more than affirm a valid judgment of sentence on an alternative basis."). With respect to harmless error, we note that G.P.'s testimony at trial was entirely cumulative of his stepfather's untainted testimony. **See Commonwealth v. Reese**, 31 A.3d 708, 719 (Pa.Super. 2011) ("Harmless error exists when, *inter alia*, the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence."). Even assuming, *arguendo*, that G.P.'s testimony should have been excluded, any such error was harmless. We also note that the jury found Appellant not guilty of simple assault with respect to G.P. and J.P.